UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MARY MARTINEZ,

  Plaintiff,

   v.

ANDREW SAUL, Acting Commissioner of
Social Security,[1]

  Defendant.

Case No. 2:18-cv-02440-EJY

**ORDER**

Re: Plaintiff's Motion for Reversal and/or Remand
(ECF No. 16)

  Plaintiff Mary Martinez ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. For the reasons below, the Commissioner's finding is reversed, and this matter is remanded for further proceedings consistent with this Order.

## I. BACKGROUND

  On October 24, 2014 and November 15, 2014, Plaintiff filed applications for DIB and SSI alleging an October 1, 2014 onset of disability. Administrative Record ("AR") 415–22. The Commissioner denied Plaintiff's claims by initial determination on September 18, 2015 and upon reconsideration on December 18, 2015. AR 349–53, 358–68. On January 29, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 369-71. After conducting an in-person hearing on May 15, 2017 (AR 243–84), ALJ Cynthia R. Hoover issued her determination on October 18, 2017, finding Plaintiff not disabled (AR 20–41). On December 12, 2017, Plaintiff requested that the Appeals Council review the decision by the ALJ. AR 412–14. When the Appeals

---

[1]  Andrew Saul is the current Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Council denied Plaintiff's request for review on November 8, 2018, the ALJ's decision became the final order of the Commissioner.  AR 16.  This civil action followed.

## II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted).  In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

A.    **Establishing Disability Under The Act**

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)     the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b)    the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant meets both requirements, he or she is disabled."  *Id.*

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five.  *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  *See* 20 C.F.R. § 404.1520(b).

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  *See* 20 C.F.R. § 404.1520(c).

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *See* 20 C.F.R. § 404.1520(d).

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(e).

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")],

or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  *See* 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.  *See id.*

*Id*. at 1098–99 (internal alterations omitted).

**B.    Summary of ALJ's Findings**

In preparation for step one, the ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.  AR 26.  At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since October 1, 2014, the alleged onset date of disability.  *Id.*  At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "affective disorder[] and anxiety disorder."[2]  *Id.*  At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any "listed" impairment in 20 C.F.R., Part 404, Subpart ("Subpt.") P, Appendix ("App.") 1.  AR 26–27.

In preparation for step four, the ALJ found Plaintiff had the residual functional capacity ("RFC")[3] to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled work with minimal social contacts, defined as occasional contacts with others.

AR 30.  At step four, the ALJ determined that "[t]he claimant is unable to perform any past relevant work."  AR 34.  In making this finding, the ALJ considered the testimony of the vocational expert, who testified that "the claimant has past relevant work as a telemarketer, DOT Code 299.357-014, SVP 3, sedentary and semi-skilled work[.]"  *Id.*  However, because Plaintiff's RFC limited her to

---

[2]    Although immaterial to the Court's decision today, the ALJ recognized that:

> the claimant has several other conditions, including the following: anorexia, abdominal dysfunction, dysmenorrhea, menorrhagia, atelectasis, dental pain, abnormal detention, unspecified chest pain, other disorder of the skin, cellulitis, dyslipidemia, sinusitis, and liver abnormality.

AR 26.  The ALJ found there was "insufficient evidence to medically determine the existence of these conditions within the definition of the disability regulations."  *Id.*

[3]    "Residual functional capacity" is defined as "the most you can still do despite your limitations."  20 C.F.R. § 416.945(a)(1).

unskilled work, the ALJ determined that Plaintiff would be unable to perform her past relevant job as a telemarketer. *Id*. The ALJ classified Plaintiff as "an individual closely approaching advanced age[] on the alleged disability onset date"; categorized Plaintiff as possessing "at least a high school education" and being "able to communicate in English"; and, treated the transferability of job skills as immaterial to the disability determination. *Id*.

At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that the claimant can perform, including the following representative occupations:

1.  Hand packager, DOT Code 920.587-018, SVP 2, medium and unskilled work, of which there are 170,000 such jobs in the national economy;
2.  Cleaner, hospital, DOT Code 323.687-010, SVP 2, medium and unskilled work, of which there are 387,000 such jobs in the national economy; and,
3.  Kitchen helper, DOT Code 318.687-010, SVP 2, medium and unskilled work, of which there are 200,000 such jobs in the national economy.

AR 35. The ALJ confirmed that the vocational expert's testimony is consistent with the information found in the DOT. *Id*.

The ALJ concluded that, "[t]he claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2014, through the date of this decision[.]" AR 36. Accordingly, the ALJ denied Plaintiff's applications for DIB and SSI because the claimant was not disabled under sections 216(i), 223(d), and section 1614(a)(3)(A), respectively, of the Social Security Act. *Id*.

## C.   Plaintiff's Symptom Testimony

On examination by the ALJ at her administrative hearing, Plaintiff testified that she had just turned 55 years old. AR 249. Plaintiff lives in a mobile home with her boyfriend Maurice Aho.[4] *Id*. Plaintiff's source of income comes from food stamps and Maurice. *Id*. Plaintiff is legally separated and has four children who do not live with her. AR 250. Plaintiff claims she has never received benefits, including worker's compensation or unemployment benefits. *Id*. Plaintiff possesses a suspended Arizona driver's license. *Id*. When Plaintiff needs to go out, her boyfriend will drive her around. *Id*. Plaintiff finished high school and attended college off and on for two

---

[4]      Plaintiff's boyfriend, Maurice Aho, testified at her administrative hearing. AR 274–78. The ALJ gave little probative weight to Mr. Aho's opinion because "he is not a qualified . . . medical professional," "his proposed limitations [are not] supported by concurrent medical reasoning," and he has a "personal relationship" with Plaintiff. AR 33–34. The Court does not discuss this lay witness testimony because the parties do not contest the ALJ's findings on this basis.

years.  AR 251.  Although Plaintiff did not receive any educational certificates, she did receive vocational training through a patient care assistant work program at Good Samaritan Hospital.  AR 252.  Plaintiff subsequently worked as a telemarketer.  AR 253.  From 2007 to 2009, Plaintiff was on unemployment and did not work.[5]  AR 256–57.  Plaintiff then worked as a telemarketer for debt consolidation services.  AR 259.

Plaintiff alleges that she cannot work now because her "mind is not sharp.  [Her] thoughts . . . come kind of slow[ly].  [She is] kind of stuttering now.  . . . [A] lot of the medications [Plaintiff takes] make that happen.  And if [Plaintiff does not] take those, then [she] hear[s] voices[.]"  *Id*.  Plaintiff claims potential employers do not take her candidacy seriously because she is "mentally ill."  AR 260.  At the time of the hearing, Plaintiff had an upcoming appointment scheduled with a psychiatrist.  *Id*.  Plaintiff sees a nurse practitioner once or twice a month to talk about her mental health condition and to refill her prescriptions.  AR 261.

Plaintiff does not smoke, drink alcohol or use any drugs.  AR 262.  "Lately, [Plaintiff has] been in a pretty terribly depressed state, and [she has] been doing a lot of sleeping[.]"  *Id*.  Plaintiff "can open a microwave and put a microwav[able meal] in[.]"  *Id*.  Plaintiff does not do the dishes, clean the kitchen on a regular basis, vacuum or sweep.  *Id*.  For the past two or three years, Plaintiff has relied on her boyfriend to run the laundry and to make sure the floors get vacuumed.  AR 262–63, 267–68.  Plaintiff does not go out to church.  AR 263.  Plaintiff used to like making art, but she "[doesn't] feel like doing art right now."  *Id*.  Plaintiff "[s]ometimes" watches television.  *Id*.  Plaintiff does not use the Internet regularly.  *Id*.  Plaintiff and her boyfriend own a pit bull that is "pretty easy to take care of[.]"  *Id*.

On examination by her counsel, Plaintiff testified that she would normally miss "at least two or three" days a week of part-time work.  AR 264.  Plaintiff maintained that she has never worked a full-time job.  *Id*.  Plaintiff confirmed that she would miss "at least four or five days a month" if she were to work full-time.  AR 264–65.  Even when compliant with medication, Plaintiff struggles with getting out of bed and showering on a regular basis.  AR 265.  Plaintiff does not believe she would

---

[5]  This admission contradicts Plaintiff's testimony in which she stated she had never received unemployment benefits.  *Compare* AR 250 *with* AR 256–57.

be able to deal with a supervisor in her present state.  *Id*.  "[W]ith every supervisor [Plaintiff has] had, . . . it always ends up with something horrible, . . . because they feel like they have to make provisions for [Plaintiff] because [she does not] type, and [she is] not that great on a computer."  AR 266.  Plaintiff testified that her lack of skills made her previous supervisors "angry" and she would get fired.  *Id*.  When people "talk[] to [Plaintiff], [she has] to ask them to repeat themselves a few times because [she cannot] grasp[] what they're talking about on the phone[,] which isn't good [for] a telemarketer."  *Id*.  Plaintiff states she has experienced problems dealing with the public since 2013.  AR 266–67.  Plaintiff is not able to "work in a big, open telemarketing room" or "deal with co-workers[.]"  AR 267.

Plaintiff was first diagnosed with an unspecified mental disorder in 1994, and she alleges that her episodes have gotten "more intense and longer lasting" over the years.[6]  AR 268–69.  Plaintiff has tried to treat her symptoms with medication to no avail.  AR 268.  Plaintiff "first . . . started having to take some type of a leave from work, for like three months.  And then [she] wasn't able to go back because [she] just couldn't . . . work in the [Good Samaritan Hospital] again.  . . . And so then after that, . . . [Plaintiff] started . . . telemarketing[.]"  AR 269.  "The first time [Plaintiff] saw a psychiatrist [was] when [she] was 16 years old, and [she] got hospitalized many times between then and [until she] was . . . 20 [years old]."  AR 270.  Over the past ten years, Plaintiff has become more reclusive, and she is scared to drive or go shopping on her own.  *Id*.  When Plaintiff goes shopping, her "face starts sweating, and [she] get[s] real nervous, and [she will] start shaking.  . . . [I]t's like a huge anxiety attack."  *Id*.

On reexamination by the ALJ, Plaintiff was asked whether the medical record was accurate insofar as it stated that her medications were effective, and that she was living with her boyfriend and working full-time in 2013.  AR 271.  Plaintiff disputed the accuracy of this portion of the medical record.  *Id*.  However, Plaintiff confirmed that she was helping her boyfriend with his business in 2014.  *Id*.  At that time, Plaintiff's boyfriend had a contract with a lighting company and she would

---

[6]     Although the Court's decision concerns Plaintiff's purported mental impairments, Plaintiff also alleges that she suffers from "degenerative discs."  AR 269.

"sometimes . . . call on the phone, and make a couple of appointments[.]" *Id*. At that time, Plaintiff refused to partake in group counseling because it made her feel "very nervous." AR 272.

**D.    Vocational Expert ("VE") Testimony**

VE Susan Allison testified at Plaintiff's administrative hearing that Plaintiff worked as "a telemarketer, DOT 299.357-014, sedentary work performed at sedentary, semi-skilled, SVP of 3." AR 279. ALJ Hoover asked the VE to:

> assume a hypothetical individual of claimant's age, education and background with the past [telemarketer] job[ the VE] described. Further assume this individual would be limited to unskilled work with minimal social contacts, which [the ALJ] would define as occasional contacts with others. Could this hypothetical individual perform any of the past work [the VE] described?

AR 280. The VE replied that the hypothetical individual would not be able to work as a telemarketer "if telephone contact . . . throughout the day [were] continuous." *Id*.

The ALJ then asked the VE if there were other "unskilled," "medium" level exertional occupations that the hypothetical individual could perform. *Id*. The VE responded that the individual could work as a "hand packager, DOT 920.587-018, medium, unskilled, SVP of 2, nationally approximately 170,000 positions"; "[c]leaner, hospital DOT 323.687-010, medium, unskilled, SVP of 2, nationally approximately 387,000 positions"; and, "kitchen helper, DOT 318.687-010, medium, unskilled, SVP of 2, nationally approximately 200,000 positions." AR 280–281. The ALJ then asked the VE if the hypothetical individual could find employment if she were to miss one day of work per week. AR 281. The VE responded that the hypothetical individual would not be able to sustain any competitive employment on the market. *Id*.

On examination by Plaintiff's counsel, the VE testified that the hypothetical individual would be able to perform the jobs provided with an "additional limitation of limited contact with co-workers and supervisors" because the proposed jobs do not require people "to work as a team, or in union with other people." AR 282. Plaintiff's attorney also asked whether a hypothetical individual who had "no contact with supervisors[] would . . . be able to do those tasks." *Id*. The VE replied she would not. *Id*. Plaintiff's counsel asked whether an employee who is "off task at least one to two hours a day . . . would . . . be able to maintain these jobs." AR 282–83. The VE again said she would not be able to sustain such employment. AR 283.

**E.**    **Issues Presented**

Plaintiff maintains the ALJ erred by rejecting her symptoms complaints on the basis of her purported "conservative medication management"; improvement of symptoms with treatment; reports of daily living; and, lack of acute psychological distress during her therapy, medication management appointments, and at an emergency room visit in May 2017.[7] AR 33.

**1.**    **The ALJ's Credibility Determination**

The ALJ must engage in a two-step analysis when evaluating whether a claimant's testimony concerning pain, symptoms, and level of limitation is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007), *citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[8] *Garrison*, 759 F.3d at 1014–15 (internal citation omitted). An ALJ's finding on this matter must be properly supported by the record and be sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (internal citation omitted).

In weighing a claimant's credibility for cases involving ALJ decisions rendered on or after March 28, 2016, including the present case, the ALJ may consider a claimant's: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that

---

[7]    In her Motion to Remand, Plaintiff does not address the ALJ's findings concerning the medical opinions in the record from the consultative examiners, nor does Plaintiff challenge the ALJ's RFC assessment. Because Plaintiff has not sought appeal of these issues, the Court does not discuss the ALJ's findings on these bases. *Wilcox v. Commissioner*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1998) ("[a]rguments not addressed in a brief are deemed abandoned").

[8]    In his Counter-Motion to Affirm and Memorandum of Points and Authorities in Support of Opposition to Plaintiff's Motion for Reversal/Remand, Defendant maintains that the clear and convincing reasons standard when reviewing an ALJ's decision to discredit a claimant's allegations is "inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g)[.]" ECF No. 17 at 5, n.4 (internal quotation marks omitted). Notwithstanding, the Ninth Circuit has employed the clear and convincing reasons standard when reviewing an ALJ's decision to discredit a claimant's allegations. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006). This Court is bound to follow Circuit precedent.

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[9]   Social Security Ruling ("SSR") 16-3p (eff. Mar. 28, 2016), 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c).   The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."   SSR 16-3p, 2016 WL 1119029, at *2.   Notwithstanding, a claimant's statements about his pain or other symptoms alone will not establish that he is disabled.   20 C.F.R. § 416.929(a)(1); 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability.").   A claimant is not entitled to benefits under the Social Security Act unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.   *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Plaintiff argues the ALJ erred by failing to articulate clear and convincing reasons for discounting her subjective complaints.   ECF No. 16 at 5:14–12:16.   In contrast to this argument, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms at step one of the *Garrison* analysis.   AR 30.   At step two, however, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]"   *Id.*   The Court examines the ALJ's findings below.

a.   Plaintiff did not receive conservative treatment.

Evidence of conservative treatment is a sufficient basis upon which an ALJ may discount a "claimant's testimony regarding the severity of an impairment."   *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), *citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *see also Tommasetti*

---

[9]   SSR 96-7p was superseded by SSR 16-3p on March 28, 2016.   SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." However, both rulings require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms.

*v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").  Here, the ALJ found that "the majority of the evidence of record indicates that the claimant maintained grossly intact emotional and cognitive functioning during the relevant period with the benefit of what appears to be no more than routine and conservative medication management."  AR 33; *see also* AR 31.  The ALJ opined that "the claimant's treating physicians have . . . not recommended or prescribed more aggressive treatment modalities such as course of inpatient therapy or other psychiatric hospitalization, for example."[10] AR 33.

Plaintiff's medication regimen, which consisted, in part, of Seroquel and Lithium, did not constitute conservative treatment.  AR 824, 826, 830–32, 834–35, 840, 846, 854.  "Seroquel is a strong psychiatric medication. . . . Numerous courts," including this district court, "recognize[] that the prescription of . . . Seroquel connotes mental health treatment which is not "conservative," within the meaning of social security jurisprudence." *Childers v. Berryhill*, 3:18-cv-00170-RCJ-CBC, 2019 WL 1474030, at *8 (D. Nev. Mar. 12, 2019) (internal citations and quotation marks omitted).  Further, "Lithium is a powerful medicine.  . . . Ample case law exists within the Ninth Circuit concluding that an ALJ errs by describing as conservative the prescription of such drugs as Lithium." *Id*. (internal citations and quotation marks omitted).

Defendant does not address the characterization of Seroquel and Lithium as conservative medications because Defendant emphasizes that "the ALJ relied on the efficacy of Plaintiff's treatment, which Plaintiff does not adequately account for."  ECF No. 17 at 9:12–13 (internal citations omitted).  The efficacy of Plaintiff's treatment is distinguishable from the purportedly conservative nature of her medication regimen and is discussed in the next section of this Court's

---

[10]    The ALJ treats the purported lack of "aggressive treatment modalities" as a separate reason to discount Plaintiff's symptom complaints from her conservative medication regimen.  AR 33.  The Court considers these findings together.

11

Order.  Further, Defendant failed to challenge Plaintiff's claim that the ALJ mischaracterized the nature of her treatment and, therefore, waived this argument.  *Justice v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015), *aff'd*, 720 Fed. App'x 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (internal brackets, citations, and quotation marks omitted).  Therefore, and based on the foregoing, the ALJ's determination that Plaintiff's treatment was purportedly conservative falls short of being a clear and convincing reason to discount her symptoms complaints.

b.    The ALJ improperly rejected Plaintiff's symptoms complaints on the basis of efficacy of treatment.

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti*, 533 F.3d at 1040 (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  In the context of mental health issues, the Ninth Circuit counsels against "reject[ing] a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017.  Of note, the SSRs further acknowledge that side effects of medication may affect an individual's ability to work and, therefore, the ALJ properly considers them in disability determinations.  SSR 16-3p.

Plaintiff avers that the ALJ erred in rejecting her complaints because her symptoms waxed and waned throughout the course of her treatment.  ECF No. 16 at 10:1–2 (internal citation omitted).  Plaintiff maintains that she has been under constant supervision by mental health providers who have cycled her through a medley of medications to "simply try and control her symptoms.  Despite this level of treatment, . . . [Plaintiff] continued to experience exacerbations in her symptom[s] which have required hospitalizations." *Id*. at 10:16–18.  Plaintiff also argues that not only have her medications been ineffective, but they have also caused her to experience adverse side effects. *Id*. at 8:1–3 (internal citations omitted).  For example, on July 12, 2016, Plaintiff initially expressed her "negative feelings" about Seroquel but "expressed that she is feeling better [after taking Seroquel]

12

and says she has experienced a reduction in symptoms." AR 834. However, approximately one month later Plaintiff reported experiencing auditory and visual hallucinations while tapering off Seroquel (AR 829–30), and reported "nightmares and headaches . . . associated . . . with Seroquel, which caused her to stop taking it." (AR 832). It appears the last time Plaintiff received a refill on her Seroquel was on September 27, 2016. AR 824. Ultimately, on May 9, 2017, Plaintiff was transported to the Sunrise Hospital and Medical Center's emergency room department complaining of depression and auditory hallucinations. AR 863–87.

Defendant is careful to distinguish the efficacy of Plaintiff's treatment from its purportedly conservative nature. ECF No. 17 at 9:12–13 ("Regardless of [the treatment's purportedly conservative] nature however, the ALJ relied on the efficacy of Plaintiff's treatment, which Plaintiff does not adequately account for") (internal citation omitted). The Commissioner points out that "[w]hile Plaintiff asserts that her symptoms increased, she cites to her own testimony, which does nothing to bolster her claims."[11] *Id*. at 9:15–17 (internal citation omitted).

The Court does not reach the parties' respective arguments because the ALJ did not provide a clear and convincing reason to discount Plaintiff's symptoms complaints based on the efficacy of her treatment other than to say that she "benefit[ed]" from "routine and conservative medication management." AR 33. The ALJ found Plaintiff:

> complained of some side effects of her medication in May [2016], but returned in stable and intact mental condition later that same month following a change in her medication . . . . . . . She thereafter described continued reduction in her mental symptomology on follow-up in July . . . .

AR 31 (internal citations omitted). Thus, the ALJ implies that Plaintiff's medication regimen is effective, but does not clearly and convincingly address the side effects of Seroquel. In other words, the ALJ's finding on this basis lacks the specificity required by law. *Whitehorn v. Astrue*, 321 Fed.Appx. 679, 681 (9th Cir. 2009) (the ALJ is required to provide specific, clear, and convincing

---

[11] The Court writes separately to note that Defendant fails to discuss Plaintiff's complaints of hallucinations at her August 2016 clinical visit and, therefore, presents an incomplete view of the longitudinal medical record. In his Opposition, Defendant cites to "treatment records show[ing that Plaintiff] had been able to stabilize her psychiatric symptoms with prescription medication *prior to her October 23, 2014 alleged onset date*." ECF No. 17 at 6:25–27 (internal citations omitted) (emphasis added). Defendant's citation is unpersuasive. Most importantly, the ALJ did not find that Plaintiff's symptoms were alleviated by prescription medication prior to her alleged onset date. Had the ALJ made this determination, it could have supported a finding of no disability.

reasons to reject a claimant's testimony concerning the side effects of medications) (unpublished). Indeed, the ALJ does not discuss the alleged hallucinogenic side effects caused by Seroquel at all other than to say Plaintiff "complained of *some side effects* of her medication."  AR 31 (emphasis added); *see also Corthion v. Berryhill*, 757 Fed.Appx. 614, 616 (9th Cir. 2019) (the ALJ erred in failing to provide any "'meaningful explanation' in support of his conclusion that [the claimant] did not report debilitating side effects from her medication, nor explain[] how that fact undermined her testimony.") (internal citation omitted) (unpublished); *Snoeck v. Colvin*, 584 Fed.Appx. 755, 756 (9th Cir. 2014) (the ALJ did not meet the clear and convincing standard because he "failed to identify the relevant 'symptoms' or 'adverse side effects'" of a claimant's medication) (unpublished). Accordingly, the ALJ's decision to discount Plaintiff's symptom testimony on account of the efficacy of her treatment was unsupported by substantial evidence.

> c.   The ALJ improperly rejected Plaintiff's symptoms complaints on the basis of her daily activities.

The ALJ may consider a claimant's activities that undermine reported symptoms when deciding whether a claimant's testimony about her symptoms should be discredited.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).  However, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1112–13.  Here, the ALJ found "the claimant's activities of daily living persuasively indicate that she retains greater functional capacity than an individual with total disability insofar as she reported being capable [of] a wide variety of activities, such as caring for

her personal hygiene, performing household chores, shopping in stores, and pursuing hobbies."[12] AR 33 (internal citations omitted).

The Court may not reverse an ALJ's decision based on a disagreement with the ALJ's rational interpretation of the record. *Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation," the court will not reverse the ALJ's decision). However, in this case the ALJ's finding misrepresents the record. In contrast to the ALJ's findings, Plaintiff testified that she has not been able to take care of herself very well. AR 265. Even when compliant with her medication, Plaintiff struggles with showering and getting out of bed. *Id.* In addition, Plaintiff does not do dishes, clean the kitchen, vacuum or sweep. AR 262. At the time of the administrative hearing, Plaintiff had relied on her boyfriend to perform household chores for the previous two to three years. AR 267–68. Further, Plaintiff only goes to the grocery store and laundromat when her boyfriend accompanies her. AR 262–63. Finally, although Plaintiff "used to like [creating] art[, she] . . . [does not] feel like doing art right now." AR 263. In sum, the ALJ's finding cannot be said to be a rational interpretation of the record and, therefore, the ALJ erred in rejecting Plaintiff's symptoms complaints on the basis of her daily activities.

> d.  <u>Plaintiff's symptoms complaints are inconsistent with the objective medical evidence, but the ALJ failed to cite a valid, additional reason to reject her testimony</u>.

An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346–47; *Fair*, 885 F.2d at 601; *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

---

[12]   Defendant maintains that the ALJ's finding respecting Plaintiff's daily activities was appropriate because Plaintiff retained her "ability to interact appropriate[ly] with various medical personnel throughout the alleged disability," and because Plaintiff "claims that she did not shower on some days but cites . . . to her own testimony and ignores other evidence such as repeated notations from medical provide[r]s that she presented with appropriate hygiene." ECF No. 17 at 9:25–26, 9:28–10:2 (internal citations omitted). The Court does not consider these arguments because the ALJ did not rely on these alleged facts and the Court may only affirm the ALJ's decision upon a basis which the ALJ actually relied. 42 U.S.C. § 405(g); *see also Stout*, 454 F.3d at 1054.

1    In her review of the medical record, the ALJ observed that Plaintiff "presented for [her]

2  medication management appointment in mid November 2014 . . . with stable mood, normal sleep

3  patterns, and improved motivation and appetite." AR 31 (internal citation omitted).  The ALJ further

4  stated that although Plaintiff reported an "increase in her depressive feelings occurring . . . October

5  [2014,] . . . it appears that the claimant displayed grossly normal appearance, attitude, psychomotor

6  activity, affect, mood, speech, perception, thought process and content, orientation, short and long

7  term memory, abstraction, judgment, and insight on evaluation in December 2014[.]"  *Id*. (internal

8  citations omitted).  The ALJ went on to highlight the following selections from the medical evidence:

9         The claimant attested to ongoing auditory and visual hallucinations in March 2016
          despite exhibiting only some minimizing thought content and otherwise normal
10        functioning . . . .  She next complained of some side effects of her medication in
          May [2016], but returned in stable and intact mental condition later that same month
11        following a change in her medication . . . . . . . She thereafter described continued
          reduction in her mental symptomology on follow-up in July . . . .  As before, the
12        claimant further endorsed sleep disturbances in August and September 2016 despite
          again presenting with no acute cognitive or emotional abnormalities . . . . . . . No
13        other changes were reported in the claimant's overall condition in January 2017 . .
          . .  The presence of paranoid anxiety was nonetheless remarked upon that January,
14        as was the presence of depression that April . . . .  It appears that the claimant was
          subsequently transported to the emergency room via emergency services in May
15        2017 for depression, auditory hallucinations, and self-harming ideations . . . .
          Tellingly, however, the record shows that the claimant was quickly discharged in
16        stable condition and without explicit diagnosis . . . .  No other acute cognitive or
          emotional concerns were remarked upon at that time.

17

18  AR 31–32.  The ALJ therefore found that the Plaintiff:

19        repeatedly presented in no acute psychological distress on nearly all of her therapy
          and medication management appointments without any acute concerns in either
20        area. . . . [D]espite the claimant's presentation to the emergency department in May
          2017, . . . she was quickly discharged without any concurrent remarks of any acute
21        psychological concern[.13]

22  AR 33 (internal citations omitted).

23         The Court reviewed the medical evidence and confirmed that the ALJ's finding of

24  inconsistency is a reasonable interpretation of the record.  Specifically, the record reveals that on

25  March 8, 2016, Plaintiff demonstrated "fair insight, judgment, and impulse control" and presented

26  _____
    13      The ALJ discusses Plaintiff's alleged lack of "acute psychological concern" at her May 2017 emergency
27  department visit as a separate reason to discount her symptoms complaints from her perceived lack of "acute
    psychological distress" at her therapy and medication management appointments.  AR 33.  The Court combines these
28  findings into one section discussing discrepancies between Plaintiff's symptoms complaints and the objective medical
    evidence.

as "conscious, alert and oriented times four in no acute distress" with "euthymic" mood and "congruent" affect, despite complaining of hallucinations and paranoia.  AR 847–48.  On May 22, 2016, Plaintiff's provider assessed the same "normal" clinical findings, and discontinued Plaintiff from Latuda after she complained the medication made her "bat shit crazy and . . . [feel] like killing herself."  AR 839.  Thereafter, Plaintiff "denie[d] social ideation, intent, plans, or means" and her provider(s) assessed virtually identical "normal" clinical diagnoses at each of her May 24 (AR 837), July 12 (AR 834), August 2 (AR 832), August 4 (AR 830), August 19 (AR 829), September 7 (AR 828), and September 27, 2016 (AR 827) visits.  On January 9, 2017, Plaintiff's affect was described as "sad" and "anxious," and she reported "see[ing] shadows."  AR 792.  However, Plaintiff's eye contact was "focused," her speech "coherent," and her insight and judgment "fair."  *Id.*  On April 9, 2017, Plaintiff was diagnosed with unspecified depression but, again, she showcased normal clinical results on physical examination.  AR 797–98.  On May 9, 2017, Plaintiff was transported to the Sunrise Hospital and Medical Center's emergency department complaining of depression and auditory hallucinations, but she was released an hour-and-a-half later in stable condition.  AR 864, 869.

On this record, the ALJ reasonably concluded that the clinical findings do not support claimant's allegations.  Plaintiff nonetheless takes issue with the ALJ's read of the record and asks the Court to consider, *inter alia*, that she:

> reported auditory and visual hallucinations in March 2016.  . . . In August 2016, Martinez presented with anxious mood with congruent affect.  . . . There, she reported seeing snakes after trying to ween herself off Seroquel due to side effects. . . . In November 2016, she was described as having appropriate, but sad, angry, and anxious affect with depressed mood.  . . . She described paranoid ideations. . . . Martinez presented as paranoid and anxious with sad/anxious mood and affect in January 2017.

ECF No. 16 at 9:17–23.  Notwithstanding Plaintiff's argument, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record.  *Tommasetti*, 533 F.3d at 1038.  While the medical evidence may support another reasonable interpretation, here, the Court must defer to the ALJ's finding.  *Batson*, 359 F.3d at 1198.

In sum, the Court finds that the ALJ would have properly rejected Plaintiff's symptoms complaints as inconsistent with the objective medical evidence, but for her failure to cite a valid,

additional reason to discount Plaintiff's testimony.  *Rollins*, 261 F.3d at 857 ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence").  That is, the ALJ discounted Plaintiff's symptoms complaints on account of her alleged conservative treatment, efficacy of treatment, and daily activities, but none of these findings were supported by clear and convincing reasons.  Accordingly, this case is remanded for further proceedings consistent with this Order to allow the ALJ to determine whether such an additional reason to discount Plaintiff's symptoms complaints exists.

## IV.   REMEDY REQUEST

Plaintiff requests that this case be remanded with instructions to pay benefits or, in the alternative, for further administrative proceedings.  ECF No. 16 at 13:1–6.

In *Garrison*, the Ninth Circuit:

> devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

759 F.3d at 1020 (internal citation omitted).  The Ninth Circuit, "not convinced that the 'crediting as true' doctrine is mandatory," has exercised flexibility on other occasions and "remanded solely to allow an ALJ to make specific credibility findings."  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Here, the credit-as-true standard does not apply because further administrative proceedings concerning Plaintiff's symptoms complaints would serve a useful purpose. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("the record raises crucial questions as to the extent of [plaintiff's] impairment given inconsistencies between his testimony and the medical evidence in the record. These are exactly the sort of issues that should be remanded to the agency for further proceedings") (internal citation omitted).  Indeed, the present circumstances are distinguishable from other cases that have remanded for an immediate payment of benefits.  *Cf. Woody v. Astrue*, 357 F. App'x. 765, 767 (9th Cir. 2009) (remanding for an award of benefits because "no outstanding issues remain[ed] to be resolved"); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.

1996) (reversing and remanding for determination of benefits because "[t]here are no outstanding issues to preclude [the court] from making a disability determination on the merits.").

In addition, it is unclear whether the ALJ would be required to find the claimant disabled on remand if the discredited evidence were credited as true.  As the Commissioner notes, Plaintiff's "sole challenge is that the ALJ did not properly evaluate Plaintiff's own subjective claims of disability." ECF No. 17 at 10:16–17 (internal citation omitted).  That is, Plaintiff does not challenge and, therefore, has waived any argument concerning, the consultative examiners' opinions in the record, which warrant finding her not disabled.  AR 32–33; *see also Wilcox*, 848 F.2d at 1008 n.2.  Therefore, even if the credibility of Plaintiff's symptoms complaints is upheld by the ALJ on remand, a finding of disability does not necessarily follow.

Accordingly, the Court finds that remanding this case with instructions to pay benefits is inappropriate and, instead, will remand this case for further proceedings consistent with this Order.

## V.    CONCLUSION

The ALJ failed to demonstrate that Plaintiff's testimony should be discounted on the basis of her allegedly conservative treatment, the efficacy of her treatment, and her reports of daily living.  However, the ALJ properly demonstrated, using the clear and convincing standard, that Plaintiff's testimony should be discounted because it was inconsistent with the objective medical evidence.  Because an ALJ may not discount a claimant's symptoms complaints solely on the basis of their inconsistency with the objective medical evidence, this case is remanded for further proceedings consistent with this Order to determine whether such an additional reason exists.

## VI.    ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 16) is GRANTED, and that Defendant's Counter-Motion to Affirm and Memorandum of Points and Authorities in Support of Opposition to Plaintiff's Motion for Reversal/Remand (ECF No. 17) is DENIED.

1       IT IS FURTHER ORDERED that this matter is remanded for further proceedings consistent

2  with this Order.  On remand, the ALJ should determine whether an independent reason apart from

3  testimonial inconsistencies with the objective medical evidence exists to discount Plaintiff's

4  symptoms complaints.  Thereafter, the ALJ should determine whether Plaintiff is disabled under the

5  Regulations.

6       DATED THIS 27th day of April, 2020.

7

8                      _____

9                      ELAYNA J. YOUCHAH
                      UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28